```
              UNITED STATES DISTRICT COURT
            SOUTHERN DISTRICT OF WEST VIRGINIA

                        CHARLESTON
```

**UNITED STATES OF AMERICA**

v.                              Case No. 2:09-cr-00222-23

**SERGIO VELEZ CUEVAS**

**UNITED STATES OF AMERICA**

v.                              Case No. 2:09-cr-00222-27

**JOSEPH ROBERT FARERI**

### MEMORANDUM OPINION AND ORDER

By Memorandum Opinion and Order entered February 26, 2010 (docket # 1236), the presiding District Judge, the Hon. Thomas E. Johnston, referred defendant Fareri's Motion for Reopening of Detention Hearing or for Review of Detention ("Motion," docket # 1067) to the undersigned for disposition.  Defendant Fareri and defendant Cuevas are the only two persons in this multi-defendant case who are detained and who face only Count Eleven, which charges a violation of 18 U.S.C. § 1952(a)(1).

The Motion addresses the nature and circumstances of the offense and the weight of the evidence, in light of the discovery material provided by the government, in addition to the usual 18 U.S.C. § 3142(g) factors.  Because defendant Cuevas is in a similar situation to defendant Fareri, the undersigned determined that a hearing should be conducted as to both defendants.  Section 3142(f)

permits the re-opening of a detention hearing "at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community."

The court **FINDS** that the flow of discovery material to the defense constitutes information which was not known to the movant at the time of his prior detention hearings and which has a material bearing on issues related to detention, particularly the nature and circumstances of the offense charged.

At the hearing on March 2, 2010, Assistant U.S. Attorneys Steven I. Loew and Blair L. Malkin appeared for the United States; Thomas J. Gillooly appeared for defendant Cuevas, who was present in person. Defendant Fareri was present in person, but his attorney, Debra Kilgore, was excused due to a previously scheduled hearing in State court. The undersigned assured Ms. Kilgore that she would have the opportunity to address the court on matters specific to her client. Defendant Cuevas, who usually has the assistance of an interpreter, waived his right to have the proceedings translated.

Count Eleven of the Superseding Indictment charges these two defendants and others as follows:

> 2. On or about April 26, 2008, at or near St. Albans, Kanawha County, West Virginia, and within the

2

>Southern District of West Virginia and elsewhere, defendants . . . SERGIO VELEZ CUEVAS, . . . JOSEPH ROBERT FARERI, . . . aided and abetted by each other and by [others], . . . did knowingly and intentionally travel in and cause the travel in interstate commerce with the intent to distribute the proceeds of an unlawful activity, that is, gambling, in violation of the laws of the states of Pennsylvania, New Jersey, Maryland, Florida and West Virginia, . . . and thereafter, did perform and attempt to perform an act to distribute the proceeds of such unlawful activity.
>
>    3. The gambling enterprise involved PMC members and associates selling raffle tickets for a purported chance to win a motorcycle.  The Out of State Defendants traveled to St. Albans, . . . to distribute the proceeds of the raffle scheme to Floyd B. Moore . . . to ultimately be distributed to defendant DAVID KEITH BARBEITO, . . ., in Maryland.  The money raised was used to promote the PMC as a criminal enterprise.
>
>    In violation of Title 18, United States Code, Section 1952(a)(1) and Title 18, United States Code, Section 2.

The undersigned noted that Stipulations of Facts have been filed with respect to defendants Flood (defendant 28) and Hankins (defendant 30) in connection with their respective guilty plea to Count Eleven (## 498, 821).  The Stipulations state, in pertinent part, as follows:

>    As a member of the PMC, periodically [the defendant] and others were required to sell raffle tickets for a purported chance to win a motorcycle.  The date on which the raffle was conducted and the amount of tickets each chapter was responsible to sell was dictated by the mother club.  The raffle constituted gambling, in violation of the laws of the states in which the various PMC members resided.  The money raised from the raffle was used to promote the PMC.  Chapter presidents were responsible for distributing raffle tickets to their chapter members and for collecting money from the sale of raffle tickets by their chapter members.  The money was then delivered to the mother club member in charge of

>that particular territory, . . ..
>
>Approximately six months prior to April, 2008, Mr. Moore distributed raffle tickets to each chapter to sell, including to [the defendant]. * * * On April 26, 2008, having sold raffle tickets and collected money for the same, . . . [the defendant] and other members of the PMC, traveled from New Jersey, Pennsylvania, Florida and elsewhere to Saint Albans, West Virginia for the purpose of delivering the proceeds from the sale of the raffle tickets to Mr. Moore. Once in West Virginia, envelopes containing money raised by each chapter from the sale of raffle tickets were delivered to Mr. Moore by members of the various PMC chapters.

These two defendants have been detained since early October, 2009. Trial is currently set for May 4, 2010, seven months after their arrest. If these defendants are convicted and continue detained until after sentencing, that period of incarceration could be nearly one year. The court expressed its concern that if the defendants were convicted of this one offense, their probable sentence could be shorter than the length of their detention.

The United States conceded that it is not known whether previous annual raffles resulted in a motorcycle being won by a ticket holder. The 2008 raffle was interrupted by government agents searching for and seizing the raffle proceeds of approximately $20,000.

During argument, counsel and the court discussed 18 U.S.C. § 1952(a)(1)'s requirement that the government prove that each defendant charged in Count Eleven traveled in interstate commerce "with intent to distribute the proceeds of any unlawful activity," with "unlawful activity" defined as "any business enterprise

4

involving gambling." The court questioned whether it was necessary for the government to prove that each defendant knew that the raffle was unlawful activity. The United States relies on <u>United States v. Hawthorne</u>, 356 F.2d 740 (4th Cir. 1966), a case involving an Indiana man who traveled to West Virginia to establish a gambling facility in Greenbrier County. The Fourth Circuit wrote the following:

> We do not think the statute (18 U.S.C.A. § 1952) requires proof that the defendant knew that he was violating the Indiana law by operating slot machines in the state, although there was evidence from which the jury could have so found. Such knowledge was not required to convict under the Indiana statute, . . ., and we think it sufficient under section 1952 that the defendant knowingly caused to be transmitted interstate by the Western Union money order proceeds of a gambling enterprise which was unlawful under the Indiana statute.

356 F.2d at 742. In <u>Hawthorne</u>, the defendant owned slot machines in Indiana and used the proceeds from those machines to establish his new gambling business in West Virginia.

Defendant Cuevas relies on <u>United States v. Stagman</u>, 446 F.2d 489, 491 (6th Cir. 1971), which states that the majority of Courts of Appeals have ruled "that knowing and wilful intent to violate state laws is an element of the crime proscribed by the Travel Act." The convictions were reversed, and the Sixth Circuit explained its ruling:

> We emphasize that we do not hold that Kentucky law has or does not have a specific intent requirement in its statute proscribing gambling. Our holding is concerned solely with whether such a requirement is imposed by the federal statute, where violation of the state law is a

5

> prerequisite for conviction of the federal crime. * * * out decision seems to be consistent with the view of the Supreme Court in the recent case of Rewis v. United States, 401 U.S. 808, 91 S. Ct. 1056, 28 L. Ed.2d 493 (1971), in which a unanimous Court (Mr. Justice White not participating) held that the Travel Act did not cover causal gamblers who crossed state lines simply to make a bet.

Id. at 493. In Rewis, decided after Hawthorne, the Court held that conducting a gambling operation frequented by out-of-state bettors does not, without more, constitute a violation of the Travel Act. 401 U.S. at 811. The Stagman decision pointed out that interstate travel is "inherently lawful and Congress cannot have intended to make it a crime, without more." 446 F.2d at 494.

The court is mindful that its role is not to rule on the elements of the offense. However, the nature and circumstances of the offense must be considered as an important factor in considering detention. It appears to this judicial officer that the government's proof as to defendants Cuevas and Fareri is that they sold (or bought themselves) raffle tickets and transported them in interstate commerce to West Virginia. There is no indication that the United States will be able to prove that Cuevas and Fareri knew that the raffle constituted "unlawful activity."

During argument, counsel and the court discussed the applicable sentencing guidelines. Again, this judicial officer is mindful that she has no role in sentencing felons, and rarely considers guidelines in the context of deciding detention issues. As noted by the defense, Application Note 2 to USSG § 2E1.2 states

6

that "[i]f the underlying conduct violates state law, the offense level corresponding to the most analogous federal offense is to be used." USSG § 2E3.1 sets forth Base Offense Levels of 12 for "engaging in a gambling business" and 6 otherwise. There is no offense in Title 18 which is clearly analogous to selling raffle tickets in violation of state law. There are a variety of misdemeanors and petty offenses in the Code of Federal Regulations, such as gambling on federal property (41 C.F.R. § 102-74.395), gambling on Corps of Engineers property (36 C.F.R. § 1.218(b)(14)), and gambling in the New River Gorge National River (36 C.F.R. § 2.36(a)). These petty offenses are subject to a maximum jail term of six months.

After consideration of these matters, this judicial officer concludes that the nature and circumstances of Count Eleven is fundamentally misdemeanor conduct, added to proof problems related to defendant Cuevas' and defendant Fareri's knowledge that they were engaging in distributing proceeds of "unlawful activity." The undersigned believes that a Base Offense Level of 6 is likely to apply, plus or minus various adjustments.

Given the necessity of significant delays in the trial, it appears likely that if defendant Cuevas and defendant Fareri are maintained in custody, they will serve all or most of any sentence they may receive before they are sentenced (assuming that they are convicted). Accordingly, the undersigned believes that these

defendants' continued detention is not appropriate, despite their significant criminal histories.

The court announced its intention to release defendant Cuevas on home incarceration with electronic monitoring, and to release defendant Fareri on home detention with electronic monitoring, plus the standard conditions of release plus such other conditions as may be appropriate. Whereupon the United States moved for a stay, which was granted. The court directed the court reporter to prepare a transcript on an expedited basis.

It is hereby **ORDERED** that defendant Fareri's Motion (# 1067) is granted, and defendant Cuevas' oral motion for release on bond is granted, and the United States' motion to stay its rulings is granted.

The Clerk is directed to provide this Order to Judge Johnston, counsel of record, the Probation Department, the defendants, and the Marshals Service.

ENTER: March 3, 2010

Mary E. Stanley
United States Magistrate Judge

8